Mohr vs. Tulip.

## MOHR vs. TULIP.

The principal questions involved in this cause (touching the rights of a purchaser in good faith at a void guardian's sale of land, in respect to moneys paid for the land or expended in permanent improvements thereon), having been passed upon in a former appeal herein (40 Wis., 66), are *res adjudicatæ.*

Mohr vs. Tulip.

APPEAL from the Circuit Court for *Rock* County.

This action having been sent back to the circuit court for a new trial, after the former decision of this court herein (40 Wis., 66), plaintiff obtained a verdict affirming his title and assessing his damages. An issue was thereupon made up as to defendant's claim of purchase money, improvements and taxes. On the trial of this issue, the defendant put in evidence the proceedings in county court which resulted in the guardian's sale and deed to him; and plaintiff's objection to the evidence, on the ground that it appeared upon the face of the record that the court had no jurisdiction to order the sale, was overruled.

In defendant's answer in ejectment, it was alleged that the land was struck off to him for the sum of $1,004; and the same sum was named as the purchase price in the guardian's report of the sale, in the order of the county court confirming the sale, and in the guardian's deed. In the guardian's account, as rendered to the county court, he charged himself in one place with $720, and in another with $320 (making a total of $1,040), as received from defendant; but it did not appear from that statement, *when* the money was received, nor whether it included any interest. The guardian's report and deed both stated the amount of the land at 52 acres. Defendant was permitted to testify, against objection, that he paid $20 an acre, or the total sum of $1,040. He was also permitted to testify, against objection, that he had no knowledge or information from any source of any defect or irregularity in the proceedings before the sale.

Defendant testified that the sale was made (in 1871), and the lands bid in by him; that he bid them in in person; that plaintiff and his family were then living in the house, and his horses, cattle, farming implements, etc., were on the place; that while yet a boy, in 1861, 1862 and 1863, he knew of plaintiff's family living in the same house; but that he left the country in 1864, and was a stranger in it at the time of the sale.

The jury found by special verdict, among other things: (8) That the amount of purchase money paid for the premises was $1,040; (9) that all of it had been applied by the guardian for the use and benefit of his ward; (10) that the defendant, when purchasing the premises, had no *actual* knowledge of any defects in the license, and proceedings of the court preliminary to granting it; (11) that at the time of the sale he had no knowledge or reason to believe that the premises offered for sale included the ward's homestead, on which he and his family had continuously lived for a number of years theretofore, and that they claimed them as a homestead; and (12) that, before he paid the purchase money, defendant had no knowledge or reason to believe that he was not obtaining a clear right to said premises at said sale.

Plaintiff's motion to set aside the verdict, and for a new trial, was denied; the court rendered judgment affirming plaintiff's title to the land and his right to the possession thereof, but staying execution until satisfactory proof should be made to the court of the payment or tender by him to defendant, within the time provided by law, of $1,169.75 (the balance adjudged due the defendant for purchase money and taxes), and of the interest thereon from the date of the judgment to the time of such payment, and of all taxes that might thereafter be assessed upon the premises, and paid by the defendant, with interest. It was further adjudged that the defendant have a lien upon the premises for said sum of $1,169.75, with interest. From so much of the judgment as awarded said lien and stayed execution until payment of the amount named, the plaintiff appealed.

For the appellant, a brief was filed by *Cotzhausen, Sylvester & Scheiber*, and the cause was argued orally by *Mr. Cotzhausen*. They contended, 1. That the court erred in admitting parol evidence relating to the purchase price, at variance with the record and deed and with defendant's former admissions in the pleadings. Defendant ought not to have

Mohr vs. Tulip.

been allowed to impeach the record introduced by himself, and to which he is a party. And if the premises were struck off to him for $1,004, and a deed was executed accordingly, a voluntary payment in excess of that amount cannot be recovered. 2. That the court erred in admitting evidence of a license and sale void for want of jurisdiction (Freeman on Void Judicial Sales, 29); and this is especially true where the record on its face shows want of jurisdiction. 3. That the court erred in permitting defendant to testify to his want of knowledge or information of the defects in the proceedings appearing of record. A purchaser under a power is bound to see that it exists. He cannot plead ignorance of the record. If that shows want of jurisdiction, he purchases at his peril. Parties at judicial sales cannot be allowed to remain purposely ignorant. Rorer on J. S., 287; Herman on Executions, 605; *Tillman v. Jackson*, 1 Minn., 187; *Tullis v. Brawley*, 3 id., 285; *Minor v. Willoughby*, id., 225; *Banks v. Ammon*, 27 Pa. St., 175; Kerr on Fraud, 237. 4. That the court erred in refusing to set aside the special verdict. The 11th and 12th findings were clearly inconsistent with the facts shown by the defendant's own testimony and the record of the county court. Willard's Eq., 249; Kerr on Fraud, 236, 258, 317; *Hoppin v. Doty*, 25 Wis., 573. 5. That the court erred in ordering judgment for the purchase money. The question of recovering the purchase money was not directly before this court on the former appeal, and the remarks of the court on that subject were based on what it was then supposed the defendant would be able to prove. The facts now presented show a different case. The rule of *Blodgett v. Hitt* has never been extended beyond two classes of cases: (1) Where the purchase money was used to extinguish specific liens or incumbrances, equity subrogating the purchaser to the rights of the original creditor, as in *Blodgett v. Hitt*. (2) Where the purchase money was applied to the discharge of liabilities which were contingent incumbrances upon the real estate, as in

*Winslow v. Crowell*, 32 Wis., 662. These cases all rest upon the doctrine of subrogation, and the principle that the claimant ought not to be allowed to recover a *larger interest in the land than he had before.* (In opposition to the rule, even as thus limited, see Rorer, 459, 462; and for a collection of authorities on the subject see Freeman's Void Judicial Sales, § 51.) In this case, no rule of subrogation can possibly be applied, the land being free from specific liens, and, as a homestead, from all liability for debts; and the sole ground of plaintiff's alleged liability being, that the purchase money was applied by the guardian for the use and benefit of the ward. The question raised, therefore, has not been heretofore decided in this court, but is expressly reserved in *Blodgett v. Hitt.* The rule ought not to be extended farther than it has been, and especially should not be applied to the sale of a homestead. It is the settled policy of our law to protect the homestead against all claims, however meritorious, unless made specific liens by act of both husband and wife. The equity of a purchaser who ignores the rule of *caveat emptor*, and becomes a victim of his own carelessness or ignorance, cannot rest upon broader ground than the right of the debtor and family to his exemptions. Nor is the defendant entitled to the lien claimed, under the statute of 1872. That statute cannot be construed as retroactive from the mere use therein of general language which might include past transactions. *Finney v. Ackerman*, 21 Wis., 268; *Seamans v. Carter*, 15 id., 548; *State v. Atwood*, 11 id., 422. If retroactive, it would be invalid. Such acts are valid only where they furnish a remedy for, or remove an impediment in the way of enforcing, some preëxisting legal or equitable right. They cannot interfere with vested rights of property, or create an obligation where by law none before existed. *Hasbrouck v. Milwaukee*, 13 Wis., 37. But the act of 1872, if applicable to this case, creates an incumbrance upon, or interest in, plaintiff's land, previously unknown to law or equity. But, if re-

troäctive and valid, it must be construed strictly (*Dean v. Charlton*, 27 Wis., 522); and since by its terms it applies only to cases where the "conveyance is declared void," *quære*, whether it is applicable to tortious sales absolutely void for want of jurisdiction. And again, the statute, like the previous rule in equity, protects only a purchaser in good faith, and should not be applied to one who purchases blindly, in disregard, not only of defects apparent on the record, but of facts which should have put him on inquiry.

For the respondent, a brief was filed signed by *H. S. Winsor* as attorney, with *S. U. Pinney*, of counsel, and the cause was argued orally by *Mr. Pinney*. They contended, 1. That, as this court, on the former appeal, refused to apply the doctrine of equitable estoppel by election (*Burns v. Railroad Co.*, 9 Wis., 456; *Mariner v. Railway Co.*, 26 id., 84, 89; *Blodgett v. Hitt*, 29 id., 191), on the ground that "plaintiff is required to pay all moneys, with interest, which the defendant has expended for and upon the premises," and as plaintiff thereupon obtained a recovery of the land upon those conditions, he cannot now repudiate the conditions. 2. That ch. 24, Laws of 1872 (not referred to on the former trial), which embodies the principle of *Blodgett v. Hitt*, and expands it to meet other like cases, is sufficient to support the judgment. Though passed after the sale and payment of the money, that statute was in force when this suit was brought. The case to which we seek to apply it, arose when the verdict for the recovery of the land was rendered. As applied to this case, therefore, the statute is in no sense retrospective. The right of the legislature to pass such an act with reference to future recoveries of lands theretofore sold by administrators and guardians, stands on the same grounds as its right to pass the betterment act, of which it is made a part. These acts recognize the existence of an equitable right, and give a remedy where none existed before, or new remedies in place of others. A statute cannot be held void as an unconstitutional interference

with private property, "which adjusts the equities of the parties as near as possible to natural justice." Cooley's Con. Lim., 388–9, and cases there cited; *Bright v. Boyd*, 1 Story, 478; *Booth v. Booth*, 7 Conn., 350; *Norton v. Pettibone*, id., 319; *Welch v. Wadsworth*, 30 id., 149; *Goshen v. Stonington*, 4 id., 224; *Mather v. Chapman*, 6 id., 54, 58; *Underwood v. Lilly*, 10 S. & R., 97; *Bleakley v. Bank*, 17 id., 64; *Weister v. Hade*, 52 Pa. St., 474; *Ross v. Irving*, 14 Ill., 171. See also *Satterlee v. Matthewson*, 2 Peters, 413; *Lessee of Davis v. Powell*, 13 Ohio, 308; *Hepburn v. Curts*, 7 Watts, 300; Sedgw. Stat. & Con. Law, 198–202, 666 et seq.; Cooley's Con. Lim., 372. The act extends to all conveyances whose operation is defeated by any judicial rule or declaration. See also *Winslow v. Crowell*, 32 Wis., 642, 662. 3. That the question of the purchaser's good faith, having been submitted to the jury under instructions not excepted to, was not open for consideration here; and that the good faith required by the statute is actual honesty of intention, and belief in the goodness of the title purchased. If the purchaser were bound in all cases to see that the power to sell exists, or if the protection of the act were confined to cases of secret defects, its object would be in a great measure defeated. *Green v. Dixon*, 9 Wis., 539; *Mickles v. Dillaye*, 17 N. Y., 80. 4. That the alleged defect in the sale, arising from the fact that the property was a homestead, stands on the same ground as other defects. The statute of 1872 applies to conveyances declared void for any cause whatever; and it would be as manifestly inequitable to allow plaintiff to retain both the land and the money where the land was a homestead, as where it was not.

ORTON, J. The main questions and principles governing this case were fully considered by this court when the judgment upon the main issue was passed upon and reversed in *Mohr v. Tulip*, 40 Wis., 66; and the material facts and questions of the case must be held to be *res adjudicatæ*.

Mohr vs. Tulip.

A repetition of a part of the opinion in that case will be sufficient for the disposition of this. The court in that case said: "But in view of another consideration, now to be noticed, we are unable to hold that the plaintiff is estopped from questioning the validity of this sale, which is this: The defendant set up in his answer, and gave his own testimony on the trial to support the averment, that he purchased the land at the guardian's sale in good faith, for a valuable consideration, without notice of any irregularities or defects in the proceedings, supposing he was getting a perfect title to the premises. . . Under the doctrine laid down in *Blodgett v. Hitt* (29 Wis., 176), the plaintiff cannot recover the land without refunding the purchase money with interest, and all sums paid for taxes, and paying for all permanent improvements. Of course, the plaintiff is to be allowed for the use and occupation of the premises, excluding the value of the use of the improvements. The principles upon which the accounts between the parties should be stated are laid down in the *Blodgett* case, and require no further elaboration. But as the plaintiff is required to pay all moneys, with interest, which the defendant has expended for and upon the premises, there is no ground for the application of the doctrine of estoppel."

This decision and these directions, which were to govern the future proceedings in the case, are clear, explicit and unmistakable; and the learned circuit court has been most careful and judicious, upon the trial of this case, in giving them full application and effect.

The questions relating to the good faith of the respondent in purchasing the premises at the guardian's sale, and to the matter of the homestead, were fairly submitted to the jury, and found in favor of the respondent.

We are unable to find any error in the rulings of the circuit court upon questions of evidence, or in the instructions to the jury, or in the findings of the jury, or in the judgment. The case is remarkable for its able and careful trial.

*By the Court.*—The judgment is affirmed, with costs.

