## MARONEY et al. v. TANNEHILL et al.

No. 10233—Opinion Filed Oct. 18, 1923.

Rehearing Denied June 5, 1923.

Application to File Second Rehearing Denied July 10, 1923.

(Syllabus.)

**1. Judgment—Definition and Requisites—Findings and Opinion.**

Under sections 5123 and 5143, Rev. Laws 1910, a judgment must be definite and certain, comprehending clearly the relief sought and granted, and the final determination of the rights of the parties to the action. The finding and opinion of the court are never the judgment of the court, but are only expressions as to what the court considers its judgment should be.

**2. Clerks of Courts—Duties and Powers— Entry of Judgment—Alteration.**

The functions of the clerk of the court are purely ministerial, and he only has power to enter upon the judgment docket of the court the sentence of the law as declared by a duly constituted judge, and has no power to change, add to, or take away therefrom.

**3. Appeal and Error — Review—Presumption of Regularity of Court Proceedings.**

This court will always indulge every reasonable intendment if favor of the regularity of the proceedings of nisi prius courts, and will uphold them if it may be done on any reasonable hypothesis.

**4. Judgment—Time for Rendition—Effect of Delay.**

The fact that the trial court takes a case under advisement for a period of nearly 18 months does not invalidate its judgment, neither does it militate against it, and no notice is necessary as to its entry.

**5. Indians—Allotments—Descent and Distribution.**

Where a minor Cherokee Indian by blood died seised of an allotment of the lands of the Cherokee Nation, unmarried and without issue, and left surviving her father, who was a white man and not a member of the tribe, her mother, who was a Cherokee Indian by blood and an allottee of the nation, and three brothers. the allotment of the deceased was not a new acquisition, but was an estate ancestral, and ascended to her mother under Mansfield's Dig., c. 49, of the Laws of Ark., put in force in the Indian Territory by act of Congress on July 1, 1902, this being the side of the house by which the estate came.

**6. Same.**

Where a mother dies in February, 1914, seised of an allotment of Indian land in-

herited from her deceased daughter and leaves surviving her husband and eight children, one-third of the said allotment descends to her husband, and the remainder to her children by virtue of subsection 1 of section 8418, Rev. Laws 1910.

**7. Same.**

Where minor Cherokee Indian children died since February, 1914, seized of an undivided interest of an allotment of Indian land inherited from their mother, who is an enrolled Cherokee Indian by blood, and leave surviving them their father, who is a white man and not a member of the tribe, and brothers and sisters, held, that said allotment descends to the brothers and sisters under subsection 7 of section 8418, Rev. Laws 1910.

**8. Same—Sale of Minor's Inherited Lands—Requisites.**

Under act of Congress of April 26, 1906, inherited allotted lands of the Indian Tribes may be sold by Indian minors by blood of less degree than full blood to be joined in the sale with the adult heir by their guardian in a regular court proceeding had therefor.

**9. Same—Failure of Title—After-Acquired Title.**

Where the land of minors is sold in regular court proceedings by their guardian and the title fails and the minors subsequently acquire title from an independent source, it does not inure to the benefit of the purchaser.

**10. Indians—Alienation of Allotments—Effect of Restrictions.**

Any contract to convey, or any conveyance of Indian allotted lands the alienation of which is restricted, is void, and is not the subject of ratification, adoption, or approval when the restrictions on alienation are removed.

**11. Judicial Sales—Title of Purchaser.**

The doctrine of caveat emptor is now so modified in its application that the purchaser at a judicial sale is entitled to expect and receive a sound and marketable title to the property sold.

**12. Jury—Right to Jury Trial—Ejectment.**

An action in ejectment is an action at law, and it is error for the trial court to refuse to submit it to the jury under proper instructions.

**13.—Guardian and Ward—Sale of Land—Failure of Title—Rights of Minors—Estoppel.**

Where the land of minors was sold by guardian in regular court proceedings and the title fails, such minors are not estopped by section 1150, Rev. Laws 1910, from asserting title, but can only be required to tender back the purchase price, with interest, within one year from the removal of the disability of minority, to be offset by rents and profits for the use of the land. Such minors will also be liable to the purchaser for taxes paid and permanent improvement.

Error from District Court, Ottawa County; Preston S. Davis, Judge.

Action in ejectment by Andrew P. Tannehill and others against J. J. Maroney and others. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

P. H. Maroney and J. G. Austin, for plaintiffs in error.

A. C. Towne and E. C. Fitzgerald, for defendants in error.

JOHNSON, J. This is an action in ejectment from the district court of Ottawa county. Defendants in error, plaintiffs below, recovered judgment, and plaintiffs in error, defendants below, have appealed to this court. Minnie Tannehill was a Cherokee Indian by blood of less degree than full blood, a citizen and allottee of the Cherokee Nation, and there was set apart to her an allotment of the lands of said nation, described as follows: E. ½ of the S. E. ¼ of the N. E. 1-4; S. W. 1-4 of the S. E. 1-4; N. E. 1-4 of the N. E. 1-4 and the N. W. 1-4 of the S. E. 1-4 of section 35, T. 28 N., R. 22 east, Ottawa county, Okla.

On the 27th day of October, 1902, Minnie Tannehill, at the age of two or three years, died, and left surviving her, her father, N. D. Tannehill, her mother, Lillie May Tannehill, and three brothers, Andrew P., Loyd, and Dewey Tannehill. The father was a white man and not a member of the tribe, while the mother was an Indian by blood, member of the tribe, a citizen of the nation, and on the allotment roll. N. D. Tannehill, the father, on the 30th day of November, 1906, being in possession of the allotment of his deceased daughter, Minnie Tannehill, which has been heretofore described and is now in question, entered into contract with plaintiffs in error to sell them his supposed life estate in said allotment, and that he would procure an order from the United States Court for the Northern District of the Indian Territory, authorizing him, as the guardian of his minor children, Andrew P., Loyd, and Dewey Tannehill, to sell plaintiffs in error the fee. On the 6th day of March, 1907, he conveyed to them by deed, his supposed life estate. On the 26th day of January, 1907, he procured from the court an order for the sale of what was supposed to be the fee-simple title. Appraisers were duly appointed to appraise the land, and filed their report on the 28th day of February, 1907. The land was sold to plaintiffs in error, and said sale was duly confirmed on March 7, 1907, and guardian executed deed therefor on the same day. The plaintiffs in error went into possession immediately, and, so far as the record shows, have remained in possession since.

Subsequent to this sale there were born to N. D. Tannehill and his wife, Lillie May, five children, namely: Dolly May, Lillie Bell, Dewitt, Hazel, and Juanita. On the 15th day of February, 1914, Lillie May Tannehill, the mother, died, intestate and left surviving her, her husband, N. D. Tannehill, and her eight children, namely: Andrew P., Loyd, Dewey, Dollie May, Lillie Belle, Dewitt, Hazel, and Juanita. Subsequent to the death of the mother, and before bringing this action, two of the children, to wit Dolly May and Juanita, died intestate, unmarried, and without issue.

On the 11th day of February, 1916, defendants in error, by their guardian, brought this action; the substance of their petition being that their deceased sister, Minnie Tannehill, died intestate, unmarried, and without issue, and that she left surviving her, Lillie May Tannehill, her mother, as her sole heir, to whom her allotment ascended by virtue of chapter 49 of Mansfield's Digest of the Laws of Arkansas, which had been put in force by act of Congress of July 1, 1902, in the Indian Territory, and that upon the death of the mother she left surviving her, plaintiffs in this action as her sole heirs and said allotment descended to them in fee simple under the laws of succession of this state, and that they now own both the legal and equitable title. To this amended petition plaintiffs in error filed a general denial, a plea in estoppel having been filed to the original petition. The cause was tried to a jury on October 19, 1915, and at the close of the evidence, counsel for defendants in error moved the court for an instructed verdict, which was denied, and the court, then directing his remarks to the jury, stated:

"The court, on his own motion, withdraws all questions in this case from the jury except the sole question of the rents and profits of this land in question, which the court tells the jury they may find and determine from the evidence. That is, should they find a verdict in this case in favor of the plaintiffs for the fair, reasonable cash rental value of one-half of the 80 acres of land in question—that is, an undivided one-half interest, the fair reasonable cash rental value of the one-half, undivided one-half of the 80 acres in question, should that be their verdict, they may assess such damages on that behalf as they may find the plaintiffs entitled to from the evidence."

The court then spoke to the jury with reference to the payment of taxes by the plaintiffs in error and said to the jury, in substance, that they should take the same into consideration in determining the question of rents and profits to be returned to defendants in error, and concluded his statement with these words:

"In other words, gentlemen, the court will reserve the questions of law, and the court has found under the law that these plaintiffs are entitled, and are the owners of an undivided half interest in and to this 80 acres of land along with these defendants, who own the other undivided one-half interest in this said 80-acre tract. The court is reserving all these questions of law, but tells you that much so that you may know the plaintiffs are entitled to whatever you may find the fair, usable cash rental value to their undivided one-half interest in this land, from February 15, 1914, less any taxes you may find has been paid from that same period by these defendants or any of them and render your verdict therefor."

At the conclusion of this statement the court proceeded to deliver a formal charge to the jury.

On the same day the jury returned a verdict for the plaintiffs in error, and no judgment having been prepared or ordered by the court, or filed in the case, the clerk on his own motion, on the 30th day of October, 1915, made the following entry on the judgment docket:

"Now on this the 30th day of October, 1915, the same being one of the days of the regular October, 1915, term of this court, this cause coming on for hearing, the court on matter of law finds that defendants is entitled to use and occupancy of the premises in controversy herein with the plaintiffs, except N. D. Tannehill, for and during natural life of N. D. Tannehill, as cotenants, and further finds that the defendant, J. J. Maroney, purchased said interest.

"It is therefore ordered, adjudged and decreed that judgment be entered upon the verdict of the jury herein, as to damages and that the costs be equally divided."

On the 26th day of September, 1916, defendants filed a petition for a new trial under section 5037, Rev. Laws 1910, which was on the 23rd day of March, 1917, denied. Motion for a new trial was made and overruled on the same day, exceptions saved, and 90 days given in which to serve case-made.

On the 2nd day of May, 1917, the court signed and caused to be filed and entered on its own motion, and without notice,

on the judgment docket, a judgment adjudicating the rights and interests of the parties. On the 4th day of May, 1917, a motion for a new trial was filed by plaintiffs in error, and was overruled on the 16th day of April, 1918, and on the 24th day of September, 1918, an appeal was lodged in this court.

It will only be neccessary to consider assignments Nos. 3, 9, and 11 in order to determine the questions that arise in this case, and they will be considered together.

"3. That the court erred in attempting on May 2nd, 1917, without a motion being filed and without notice to plaintiffs in error, to modify, change, decree and adjudge the rights of the parties in this action to be entirely different, materially less and contrary to the former judgment, opinion and decree of the court, as shown by the statement of court herein set out at page 149 to 150 of the case-made, and as shown by the journal entry unsigned by the court placed of record by the clerk of said court, as shown at page 162 of said case-made.

"9. That the court below erred in making the findings of fact and conclusions of law on May 2nd, 1917, as shown by said journal entry signed by the court, notwithstanding the failure of the plaintiffs below, or the court, to give notice of said intended modification of the judgment theretofore entered by the court.

"1. The court below erred in finding that the defendants below are the owners of the undivided one-half interest only in the lands in controversy as shown by the statements of the court at the bottom of page 149 of the case-made, and which, prior to the journal entry of May 2nd, 1917, constituted the only expression of the court in the trial of said cause, indicating a judgment therein.

At the outset it is pertinent to inquire whether the court had rendered a judgment in the case prior to the rendition of the judgment of May 2, 1917. In other words, does the statement of the court to the jury constitute a judgment?

Section 5123, Rev. Laws 1910, provides:

"A judgment is a final determination of the rights of the parties in an action."

Section 5143, Rev. Laws 1910:

"All judgments and orders must be entered in the journal of the court and specify clearly the relief granted or order made in the action."

It was not the purpose of the court in his informal remarks to the jury to pronounce a judgment in the case, and he did not do so. His only purpose was to give to the jury his views and findings for their information and guidance in arriving at their verdict. The findings and opinion of the court are never the judgment of the court, but are only expressions as to what the court considers its judgment should be. The judgment must be definite and certain, comprehending clearly the relief sought and granted, and the final determination of the rights of the parties to the action. Commissioners of Custer County v. Moon, 8 Okla. 205, 57 Pac. 161; Birdsell Mfg. Co. v. Fire Sprinkling Co., 87 Ill. App. 443; Demens v. Poynts, 25 Fla. 654: Cothren v. Olmstead, 57 Conn. 329; Fisk v. Parker, 14 La. Ann. 496; Judson et al. v. Gage, 39 C. C. A. 156; Broder v. Conklin, (Cal.) 33 Pac. 211; In re Garland, 52 Okla. 585, 153 Pac. 153; Black on Judgments, vol. 1, sec. 3: 23 Cyc. 666; Davis et al. v. Norton, 36 Okla. 505, 129 Pac. 750.; Dixon v. Peacock et al., 43 Okla. 92, 141 Pac. 429.

The court having failed to render judgment on the verdict of the jury and to pronounce the sentence of the law upon the matters reserved unto itself. did the clerk have the power to do so?

The functions of the clerk are purely ministerial, and he only has power to enter upon the judgment docket of the court the sentence of the law as declared by a duly constituted judge, and has not the power to change, add to, or take away therefrom. The action of the clerk in rendering judgment and entering up the same on October 30, 1915, is a nullity, and determines no matter in issue, nor the rights of any party litigant.

Section 5322, Rev. Laws 1910, provides:

"The clerk of the district court shall keep an appearance docket, a trial docket, a journal, a judgment docket. an execution docket, and such other books as may be ordered by the court or required by law."

Section 5324:

"On the journal shall be entered the proceedings of the court of each day, and all orders of the judge in vacation or at chambers and also all judgments entered on confession or default."

Section 5138:

"When a trial by jury has been had, judgment must be entered by the clerk in conformity to the verdict, unless it is special. or the court order the case to be reserved for future argument or consideration."

Black on Judgments. Vol. 1, sec. 1: Broder v. Conklin (Cal.) 33 Pac. 213; Boynton et al. v. Crockett et al., 12 Okla. 61, 69 Pac. 869; Glaughton v. Black et al., 24 Miss. 186; Ramaley v. Ramaley, 69 Minn. 491; Paine v. Aldrich et al., 13 N. Y. Supp. 455; Card v. Meincke et al., 24 N. Y. Supp. 375; LaCoste et al. v. Eastland et al. (Cal.) 49 Pac. 1046; Stearns v. Aguirre et al., 7 Cal. 443.

This disposes of the action of the court on the petition for a new trial; no judgment having been rendered, there was nothing in the case to be brought up to this court, and no appeal would lie. Putman v. Crombie, 34 Barbour's Sup. Ct. Rep. (N. Y.) 232.

We are now confronted with the question as to the validity of the court's action in rendering judgment on the 2nd day of May, 1917, and causing the same to be entered on the judgment docket.

This court will always indulge every reasonable intendment in favor of the regularity of the proceedings of nisi prius courts, and will uphold them if it may be done on any reasonable hypothesis.

There is no statute in this state prescribing the period of time when the judge of a trial court shall enter judgment upon the verdict of a jury, and neither is there any common-law rule regulating this pratice. That trial courts at their own discretion have always taken under advisement causes submitted to them and have held them in their bosoms for weeks or months, or even years, is well understood. and is now of such long usage and practice as to have become a part of the judicial system, not only of the several states, but of the general government as well. It will be presumed that this is what the trial court did. An orderly, consistent administration of the law is in harmony with the presumption. The fact that the court took the case under advisement for a period of nearly 18 months, does not invalidate its judgment, neither does it militate against it, and no notice was necessary as to its entry. If this judgment is to be challenged at all, the challenge must rest upon the court's want of jurisdiction, and the rule is well established that when the court once acquires jurisdiction it retains it for all purposes until final disposition of the matters submitted to it. A mere failure to act, a mere delay in acting, in no way impairs the power of the court to act, and so long as it retains jurisdiction it may act and its judgments are to be obeyed and

accorded that degree of solemnity to which judgments of the courts are usually entitled, though they may have tarried, though they may have been delayed. Diefendorf v. House, 9 How. Pac. (N. Y.) 243; Van Gunden v. Kane (Va.) 14 S. E. 335; Galpin v. Fishburn (S. C.) 15 Am. Dec. 614; Mayes v. Hassell (Ala.) 24 Am. Dec. 750; Perry v. Wilson, 7 Mass. 393; Todd v. Todd (S. D.) 63 N. W. 777; Thorpe v. Corwin, 20 N. J. Law, 311; McNamara v. New York, etc., R. R. Co., 56 N. J. Law, 56; McLain et al. v. St. Tenn. et al., 8 Heisk. (Tenn.) 27; Spencer et al. v. Peake, 73 Ga. 803; Brown v. Wheeler, 18 Conn. 199; In re Estate of Page, 50 Cal. 40; Arthur v. Schriever et al., 610 N. Y. Sup. Ct. 610; Dawson v. Waldheim, 89 Mo. App. 245; Reid et al. v. Morton, 119 Ill. 120; Chissum et al. v. Barbour et al., 100 Ind. 1; Ferrell v. Hales, 119 N. C. 199; Dial Adm., v. Holter, 6 Ohio St. Rep. 228; Fisk v. Osgood (Neb.) 96 N. W. 237; Stern v. Bennington (Md. App.) 60 Atl. 17; Reid et al. v. Morton et al. (Ill.) 6 N. E. 416; Jewett v. Schmidt, 45 Misc. Rep. (N. Y.) 471; Hess et al. v. Cole, 23 N. J. Law, 116; McDowell v. McDowell, 92 N. C. 227; Hamill v. Gibson, 61 Ala. 261; Babcock v. Wolf, 70 Iowa, 676; Tracy et al. v. Beeson et al., 47 Iowa, 155; Pelz v. Bollinger, 180 Mo. 252; Taber v. Wilson, 136 Mass. 56; Cotton Mfg. Co. v. Town of Gilford (N. H.) 36 Atl. 254; Harris v. Fidalgo Mill Co., 38 Wash. 171; Brown et al. v. Porter et al. (Wash.) 34 Pac. 1105; 23 Cyc. 838; 12 Am. & Eng. Enc. of Law, 80.

The case is now before us for consideration on its merits.

N. D. Tannehill, the father of his deceased daughter, Minnie Tannehill, and husband of his deceased wife, Lillie May, is not made a party in his own proper person, and for what reason, it does not appear, as his interest, if any, in the premises in litigation must be defined in order that a full determination of all the rights and interests of all the parties may be had.

Upon the death of Minnie Tannehill, her father, N. D. Tannehill, acquired no interest in her allotment, neither did her brothers, Andrew P., Loyd, and Dewey Tannehill. The allotment being an ancestral estate rather than a new acquisition, it ascended to her mother, Lillie May Tannehill, under chapter 49, Mansfield's Dig. Laws of Ark., in force in the Indian Territory, the estate having come by the mother, the father being a white man and not a member of the tribe.

It results that at the time of the conveyance to the plaintiffs in error by N. D. Tannehill, the father, he had nothing to convey, and that at the time of the court sale of the interest of Andrew P., Loyd, and Dewey, defendants in error, they had nothing to sell. Plaintiffs in error paid $1,000 cash for the property, one-third to the father, and the remainder to his three wards.

The mother, Lillie May Tannehill, died intestate, seized of the allotment inherited by her from her deceased daughter, Minnie, and upon her death one-third of said allotment, by virtue of subsection 1 of section 8418, Rev. Laws 1910, descended to her husband, N. D. Tannehill, in fee, and the remainder in fee to her eight children, Andrew P., Loyd, Dewey, Lille Bell, Hazel, Dewitt, Dolly May, and Juanita Tannehill. Since the death of the mother, two of the children, Dolly May and Juanita, having died intestate, unmarried and without issue, their interests in said allotment inherited from their mother passed to their surviving brothers and sisters heretofore enumerated, by virtue of subsection 7 of section 8418, Rev. Laws 1910.

Defendants in error Lillie Bell, Dewitt, and Hazel Tannehill are the owners of a one-ninth undivided interest each in fee in the land in question and are entitled to the immediate possession of the same. N. D. Tannehill is the owner of a one-third undivided interest in fee in said land, subject to such equities of plaintiffs in error as may be determined in an appropriate proceeding, he not being a party to this action. Defendants in error Andrew P., Loyd, and Dewey Tannehill inherited from their mother a one-ninth undivided interest each in fee in said land, and which is now subject to such equities of plaintiff in error as may hereinafter be determined.

An action in ejectment is an action at law, and it is error for the trial court to refuse to submit it to the jury under proper instructions.

Defendants in error are minor Cherokee Indians by blood of less degree than full blood and are on the allotment rolls of the Cherokee Nation. The lands of the Cherokee Nation were allotted by virtue of an agreement adopted by act of Congress, July 1, 1902, ratified by the tribe on August 7, 1902, and proclaimed by the President on August 12, 1902, taking effect on this date. Section 14 of said agreement provides as follows:

"Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken, or sold to secure or satisfy any debt or obligation, or be alienated by the allottee or his heirs, before the expiration of five years from the date of the ratification of this act."

It is evident that at the time of the court's order of sale the alienation of the land was restricted, unless the restrictions have been removed. Section 22 of the act of April 26, 1906, provides:

"That the adult heir of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribes to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States court for the Indian Territory. And in case of the organization of a state or territory, then by a proper court of the county in which said minor or minors may reside or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

But this section removed the restrictions, and under it the court sale was had.

The adult heir mentioned in the act being present in the person of the father, and participating in the conveyance, and if the defendants in error Andrew P., Loyd, and Dewey had had title, it would have passed under the sale to the purchaser and, but for the fact that the defendants in error, supra, were Indian minors, the title subsequently acquired by them would have inured to the benefit of the plaintiffs in error, the purchasers, under section 1160, Rev. Laws 1910, which is as follows:

"All rights of a mortgagor or grantor in and to the premises described in the instrument and existing at the time or subsequently accruing, shall accrue to the benefit of the mortgagee or grantee, and be covered by his mortgage, or conveyed by his deed, as the case may be." Brown et al. v. Barker et al., 35 Okla. 498, 130 Pac. 155.

This statute is substantially a re-enactment of the common law, and will be so construed. The weight of authority is, and this court so holds, that neither the statute nor the general doctrine of after-acquired title applies where the land of minors is sold by their guardians in regular court proceedings and the title fails, and the heirs subsequently acquire title from an independent source. Young et al. v. Lorain et al., 11 Ill. 624; Erwin v. Garner et al., 108 Ind. 488.

It may be contended, however, that the doctrine of caveat emptor applies, and that plaintiffs in error, purchasers at the judicial sale, must be content with whatever title they acquired. This position is not sound. The doctrine has been so relaxed that the purchaser at a judicial sale is entitled to expect and obtain a sound and marketable title to the property sold. Blight v. Banks (Ky.) 17 Am. Dec. 136; Brady v. Carteret Realty Co., 67 N. J. Law, 641; Morris v. Mowatt, 2 Paige (N. Y.) 586; Toole v. Toole, 112 N. Y. 333; Sackett v. Twining, 18 Pa. St. 199; Greenville Peoples Bank. v, Bramlett, 58 S. C. 477. It has been expressly held that the doctrine does not apply to sales by guardians under order of the court (Stonerook v. Wisner (Iowa) 153 N. W. 351); and that an after-acquired title inures to the benefit of the purchaser at a judicial sale (Frain et al. v. Burgett et al. (Ind.) 50 S. W. 873).

The final question to be considered is, Are the defendants in error Andrew P., Loyd, and Dewey Tannehill estopped to assert title to the land or to recover the same? Section 1150, Rev. Laws 1910, provides:

"Any person or corporation having knowingly received and accepted the benefits or any part thereof of any conveyance, mortgage or contract relating to real estate shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage or contract, or the power or authority to make and execute the same, except on the ground of fraud; but this section shall not apply to minors or persons of unsound mind who pay or tender back the amount of said benefit received by themselves."

If the land had been restricted land at the the time of the court sale, the statute could have had no application. This court has held in numerous opinions that any sale of restricted Indian allotted lands is void, and such sale is not the subject of ratification, approval, or adoption upon the removal of restrictions, upon the theory that a void sale or conveyance cannot be cured of its infirmity. But this holding has always been applied to restricted allotted lands of the Indian Tribes, never to any other, and could not be applied to the alienation of lands which are not so hedged and fenced about. Whitmire et al. v. Levine et al., 80 Okla. 21, 193 Pac. 884; Lynch v. Franklin, 37 Okla. 60, 130 Pac. 599: Bledsoe v. Wortman, 35 Okla. 261, 129 Pac. 841; Berry et al. v. Summers, 35 Okla. 426, 130 Pac. 152; Folsom v. Jones, 68 Okla. 233, 173 Pac. 649; Lewis et al. v. Clements, 21 Okla. 167, 95 Pac. 769; Howard et al. v. Farrar, 28 Okla. 490, 114 Pac. 695; Rogers v. Noel et al., 34 Okla. 238, 124 Pac. 976; Invest. Co. v. Board,

46 Okla. 310, 148 Pac. 846; Coody v. Coody, 39 Okla. 719, 136 Pac. 754; Stevens et al. v. Elliott, 30 Okla. 41, 118 Pac. 407.

There is no contention that there was any fraud or irregularity in the court proceedings. However, at the commencement of this action the plaintiffs were all minors, and under the guardianship of their respective guardians, who commenced this action, and the same, as shown by the amended petition of the plaintiffs, was an action in ejectment, and to recover the rents and profits amounting to $600, alleged to have been received by the defendants while in possession of said land. To this amended petition the defendants answered by a general denial.

The defendants' chain of title under which they sought to defend against the plaintiffs' chain of title consisted of: First, an agreement entered into between N. T. Tannehill, the father of the plaintiffs, and J. J. Maroney, executed on the 30th day of November, 1906, wherein it was recited that the said N. D. Tannehill is the owner of a life estate in the lands, and that his children, Andrew P. Tannehill, Dewey Tannehill, and Loyd Tannehill, minors, are the owners of the remainder in fee in said land, and that the said N. D. Tannehill had elected to sell and convey his interest and also the interest of his minor children in consideration of the sum of $1,600, which the said J. J. Maroney agreed to pay in the following manner: $100 cash, and $1,500 to be paid when the said N. D. Tannehill shall have obtained an order from the judge of the U. S. Court within the Northern District of the Indian Territory to sell the interest of said minors above named as their guardian. Second, a general warranty deed of the said N. D. Tannehill, reciting a consideration of $533.35 paid, conveying the life estate of the said N. D. Tannehill to the defendants, bearing date of March 16, 1907. Third, a guardian's deed executed on the 7th day of March, 1907, approved by Luman F. Parker, Jr., judge of said court, conveying the interest of said minors in consideration of two-thirds of $1.600, the appraised value of said land, to the defendants.

As we have hereinbefore seen, such guardian's deed did not convey any title to said land, because said minors had no title thereto, for the reason that on the death of Minnie Tannehill, the allottee, on the 27th day of October, 1902, who died at the age of two years, the title of said land ascended and vested in her mother, Lillie May Tannehill, and that the after-acquired title of the plaintiffs inherited from their mother. Lillie May Tannehill, on her death.

which occurred on the 15th day of February, 1914, did not vest in the defendants.

It follows that at the time of the trial of the instant case, the title of two-thirds of the land in controversy was in plaintiffs and the title to the remaining third was in N. D. Tannehill, subject to the life estate of the defendants.

We further hold that the plaintiffs were not estopped by section 1150, Rev. Laws 1910, from asserting such title, and can only be required by virtue of such statute and the rules of equity to tender back the purchase price received by them from the defendants, with interest, to be offset by rents and profits for the use of the land. The plaintiffs are also liable to the purchaser for taxes paid and permanent improvements. Where the ward recovers from the purchaser for taxes and permanent im sale, he is bound to refund the purchase money, with interest, and all sums paid by the purchaser for taxes and permanent improvements, Mohr v. Tulip, 44 Wis. 274; Douglas v. Bennett. 51 Miss. 680; Gaines v. Kennedy, 53 Miss. 103: In re Dickinson, 111 N. C. 108; Kendrick v. Wheeler, 85 Tex. 247.

Estoppels in equity are always favored, as their peculiar office is to promote justice. Rorer on Judicial Sales, secs. 456-471.

The right to recover the land or any part of it is denied defendants in error Andrew P., Loyd, and Dewey Tannehill until they have complied with the requirements of this opinion, and the cause is reversed and remanded to the district court of Ottawa county, to be proceeded with as herein indicated.

HARRISON, C. J., and MILLER, ELTING, and KENNAMER, JJ., concur.