**Marjorie ELY, now Brattin, Appellee,**

v.

**Lex BOWMAN, Appellant.**

No. 86227.

Court of Appeals of Oklahoma,
Division No. 3.

July 9, 1996.

Certiorari Denied Oct. 2, 1996.

---

Jot Hartley, Joseph M. Gardner, Hartley & Jones, Vinita, Oklahoma City, for Appellant.

Ronald B. Stockwell, Miami, for Appellee.

## OPINION

BUETTNER, Judge:

■ Marjorie Ely (Ely) claimed in her April 18, 1989 petition filed in Ottawa County, Oklahoma, that she owned real property in that county, the title to which Appellant Lex Bowman (Bowman) had slandered by filing a notice of pending litigation in Ottawa County, Oklahoma, based on a lawsuit he filed in Taney County, Missouri, December 2, 1988.[1] The elements a plaintiff must prove in a slander of title action are (1) a publication; (2) a false statement in the publication; (3) malice in the publication; (4) special damage by reason of the publication; and (5) ownership or possession of the property that is the object of the publication. *Bennett v. McKibben*, 915 P.2d 400, 403 (Okla.App. 1996).

The slander of title action was tried to the court in equity April 7, 1993.[2] The court took the matter under advisement and issued its judgment January 5, 1995. In its detailed findings, the court stated that each of the parties had "credibility problems," and there was substantial conflict in the testimony of the parties. The following facts are taken from the trial court's findings of facts. Ely and defendant Kenneth Bowman, a married man, had been involved in a personal and business relationship going back at least ten years. The two bought and sold real estate and motor homes. In February and May 1987, Kenneth Bowman bought two parcels of land in Ottawa County, Oklahoma for Ely. Bowman provided $30,500.00 to his son, Kenneth Bowman, to purchase one of the parcels, called the "Big House." Kenneth Bowman bought this property for Ely with the intent that it be their future marital residence. Ely was unaware of the source of funds used to purchase the Big House.

The trial court admitted a writing, dated June 5, 1987, typed by Ely, signed by Ely and Bowman, and witnessed by Kenneth Bowman. The writing stated:

> I Marjorie Ely owe Lex Bowman the sum of $30,500.00 for a home I purchased in Afton, Oklahoma, Ottawa County Lot 7 and the south 4 feet of Lot 6 in Block 59. This was a verbal agreement between myself and Lex Bowman with a note and mortgage to be made up at a later date.

The trial court found that this writing was prepared at Lex Bowman's direction and Kenneth Bowman's insistence because the men wanted the house returned to them in case Ely died before the anticipated marriage with Kenneth Bowman. Instead of marriage, however, Ely and Kenneth Bowman had a falling out in September 1988. Ely moved her things out of the Big House and married someone else.

The trial court awarded the two Ottawa County parcels to Ely free of any encumbrances; awarded Ely judgment against Kenneth Bowman for breach of a partnership agreement relating to other jointly acquired real estate; awarded Kenneth Bowman the

---

1. Bowman's Missouri lawsuit claimed Ely borrowed $30,500 from him in order to purchase the "Big House," described later in this opinion, and sought judgment for that amount and a lien against the "Big House."

2. The case was consolidated with Ely's action against Lex Bowman's son, Kenneth Bowman. The two cases involved multiple claims and counterclaims which were disposed of in the January 5, 1995 judgment. The claims involved ownership of various parcels of jointly acquired realty, conversion of personal property, and breach of a partnership agreement between Ely and Kenneth Bowman. Kenneth Bowman did not appeal. All three parties are Missouri residents.

other jointly acquired real estate; and generally left the parties as it found them with respect to other claims and counterclaims. Bowman moved for a new trial on the ground that the "Big House" transaction was a bona fide debt as conclusively proven by the writing; that awarding $2,500.00 as attorney fees was error because Ely failed to prove damages in her slander of title action; and finally because the court abused its discretion by taking the case under advisement for 21 months. Bowman's motion for new trial was overruled August 24, 1995 by a judge different from the one who heard the evidence. The judge considering the motion for new trial, who had an opportunity to review the transcript, also found the testimony conflicting, and gave deference to the trial court's personal observation of the witnesses.

### DISTRICT COURT RULE 27

■ We first examine whether the denial of Bowman's motion for new trial was erroneous because the process was "fraught with irregularities."[3] In particular, Bowman contends that the trial court's violation of 12 O.S.1991 Ch. 2, App., Rule 27 (District Court Rule 27), was sufficiently prejudicial to him so that the court abused its discretion when it denied his motion for new trial. District Court Rule 27 requires the trial court to render its decision within 60 days of the date on which it took the matter under advisement or within 60 days of the date the parties submit post-trial briefs, if such were required. If the trial court cannot meet this deadline, it can apply to the Chief Justice of the Oklahoma Supreme Court for an extension with a specific statement of its reasons for the application. In the case at hand, the trial court rendered its decision 21 months after the trial. There is no evidence of an application to the Chief Justice for an extension of time. The case was tried April 7, 1993. Ely filed her proposed findings of fact and conclusions of law April 28, 1993, and Bowman filed a similar pleading May 3, 1993. The parties filed a joint motion to settle journal entry July 27, 1994. The court's

decision was filed January 5, 1995, after which Bowman's motion for new trial was timely filed.

Bowman cites 49 C.J.S. § 113(c) for the proposition that when the constitution or a statute requires the court to enter its judgment within a certain time, and the court fails to do so, it loses jurisdiction over the case, rendering any judgment entered after that date void for want of jurisdiction. The general rule stated by § 113(c), however, is:

> Statutes limiting the time for entering judgment are directory only, and a failure to comply therewith does not invalidate a judgment subsequently entered. Except in a few states, a like conclusion is reached as to constitutional or statutory provisions limiting the time for rendering judgment.

■ The interpretation which fits Oklahoma's historical procedure, as well as its regulation, is that the court owes a duty to timely render its decision. Failure to do so may be an irregularity in the proceedings, but does not raise a question of jurisdiction. In order for a party to receive a new trial based on this irregularity in the proceedings, it must prove it was harmed by the court's dilatory rendering of the judgment.

Before the implementation of a time limitation for rendering decisions, Oklahoma law stated the "fact that the court took the case under advisement for a period of nearly 18 months does not invalidate its judgment, neither does it militate against it, and no notice is necessary as to its entry." *Moroney v. Tannehill,* 90 Okla. 224, 215 P. 938, 942 (1921). The *Moroney* court, speaking in a different era, stated:

> This court will always indulge every reasonable intendment in favor of the regularity of the proceedings of nisi prius courts, and will uphold them if it may be done on any reasonable hypothesis. There is no statute in this state prescribing the period of time when the judge of trial courts shall enter judgment upon the verdict of a jury and neither is there any common-law rule

---

**3.** Although Bowman does not specify which ground for new trial he is using, we presume he depends on 12 O.S.1991 § 651(First), which states: Irregularity in the proceedings of the

court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which the party was prevented from having a fair trial.

regulating this practice. That trial courts at their own discretion have always taken under advisement causes submitted to them and have held them in their bosoms for weeks or months, or even years, is well understood, and is now of such long usage and practice as to have become a part of the juridical system, not only of the several states, but of the general government as well.

\* \* \* \* \* \*

A mere failure to act, a mere delay in acting, in no way impairs the power of the court to act, and so long as it retains jurisdiction it may act, and its judgments are to be obeyed and accorded that degree of solemnity to which judgments of the courts are usually entitled, though they may have tarried, though they may have been delayed.

With reference to the question of jurisdiction, the Oklahoma Supreme Court has stated that "[m]ere delay does not work a loss of jurisdiction to render or enter a judgment." *Dusbabek v. Bowers,* 173 Okla. 53, 43 P.2d 97, 100 (1934) (trial court had jurisdiction to render judgment two and one-half years after verdict).

Article 2, § 6 of the Oklahoma Constitution affords a speedy and certain remedy for wrongs and injuries to person, property or reputation.[4] District Court Rule 27 implements the constitutional provision, and modernizes the historical milieu described in *Moroney,* by providing certain time limits within which a court must render judgment after taking a matter under advisement.[5] Oklahoma's historical perspective, as well as the lack of any specified sanction for a violation of District Court Rule 27's time limitations, does not support Bowman's argument that a dilatory court loses jurisdiction to render judgment.

 District Court Rule 27 does impose a duty on the court to comply with the time limitations when taking a case under advisement.[6] If the trial court violates this duty, there may be an irregularity in the proceedings.[7] Nonetheless, all motions for new trial must meet the threshold test that the stated ground, such as irregularity in the proceedings, affects "materially the substantial rights of such party." 12 O.S.1991 § 651. The movant for a new trial must prove that the irregularity in the proceedings materially, not theoretically, affected a substantial, not minimal, right. In the case at bar, Bowman did not produce evidence that the delay materially harmed a substantial right. Bowman argues that the judge could not remember the facts almost two years after the trial. The record reveals, however, that all parties filed proposed findings of fact within thirty days of the trial. No evidence was offered that, because the judge rendered the opinion 21 months after the trial, he was unable to recall the case sufficiently to render a just decision.

 Finally, we agree that the function of a new trial motion "is to open judicial inquiry into errors occurring during the conduct of trial proceedings. Its office is to invoke the

---

4. Okla. Const., Article 2, § 6 provides: The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

5. District Court Rules do not have the same status as statutes because they do not have legislative approval. They are promulgated by the Supreme Court under the authority of 12 O.S. 1991 § 74 and Article 7, § 6 of the Oklahoma Constitution. However, such rules have the force and effect of statutes. *Renfrow v. Ittleson,* 110 Okla. 109, 236 P. 585 (1925) (Syllabus by Court). The current version of District Court Rule 27 was adopted in 1990, effective January 1, 1991.

6. Judges are under duties to "respect and comply with the law ..." and "dispose promptly of the business of the court." 5 O.S.1991 Ch. 1, App. 4, Code of Judicial Conduct, Canons 2(A) and 3(A)(5).

7. In *Lincoln v. Lincoln,* 840 P.2d 41, 46 (Okla. App.1992), the trial court held the record open for submission of bank statements. Appellant in that case argued that a seven month delay in rendering the decision violated Rule 27. This court found, because the record was silent about when or whether the bank statements were presented, that the appellant had not shown a Rule 27 violation.

power of a trial court to correct and cure its own errors." *Conyers v. Conyers,* 386 P.2d 633, 638 (Okla.1963). "Trial court," however, does not necessarily mean the same trial judge. In this case, the judge who heard the new trial motion was not the same judge who heard the evidence and rendered judgment. However, he had the benefit of the parties' pleadings, a transcript of the trial, and the argument of counsel. It is well settled in Oklahoma that a successor judge has authority and jurisdiction to consider motions for new trial relating to trials conducted by a predecessor in office. *Wilson v. Oklahoma Ry. Co.,* 207 Okla. 204, 248 P.2d 1014, 1020 (1952); *Indian Territory Illuminating Oil Co. v. Bell,* 173 Okla. 46, 46 P.2d 481, 483 (1935). Bowman has not demonstrated that the trial court abused its discretion in denying his motion for new trial.

### ATTORNEY FEES

■ The trial court awarded $2,500.00 in attorney fees to Ely. Bowman claims this was error because the trial court found that she "has not proven any money damages as to Defendant, Lex Bowman's, slander of title to the big house,...." The statute Ely relied upon in seeking attorney fees, 16 O.S. 1991 § 79, does not require a showing or finding of damages. This section acts to transfer the burden of attorney fees in a quiet title action to the person who purposely slanders title by filing a notice:

> No person shall use the privilege of filing notices hereunder for the purpose of slandering the title to land and, in any action brought for the purpose of quieting title to land, if the court shall find that any person has filed a claim for that reason, he shall award the plaintiff all the costs of such action, including such attorney fees as the court may allow to the plaintiff, and, in, addition, shall decree that the defendant asserting such claim shall pay to plaintiff all damages that plaintiff may have sustained as the result of such notice of claim having been so filed for record.

In his motion for new trial, Bowman mistakenly relied on 12 O.S.1991 § 936, which authorizes attorney fee awards in actions on open accounts and contracts for the sale of goods, wares, or merchandise, or labor, to oppose the attorney fee award. Bowman did not otherwise object to the applicability of § 79 to the instant proceeding or the amount of the attorney fee award. On appeal, Bowman complains for the first time that the judgment did not include a specific finding that the lis pendens was filed "for the purpose of slandering the title to land." Bowman's motion did not adequately inform the trial court of this alleged error. 12 O.S.1991 § 991(b). It is the type of error that, had the trial court been specifically informed, could have been easily resolved.[8] As a result, we will not consider it.

### RESULTING OR CONSTRUCTIVE TRUST

■ Bowman next argues that the writing signed by the parties was sufficient evidence to impose either a resulting or constructive trust on the property. Ken Bowman denied having anything to do with the transaction. Lex Bowman testified that he loaned Ely the money for the property purchase. Ely stated that the property was a gift from Ken Bowman, who had borrowed the money from Lex Bowman. The trial court found that the writing was not sufficient to impose a constructive or resulting trust in favor of Bowman and awarded the property to Ely free of encumbrances. Although the trial court acknowledged that each of the witnesses had credibility problems, it either credited Ely's testimony that the house was a gift and that Ken Bowman was the true borrower of the money and payor of the consideration, or it found that Bowman had not met his burden of proof. Questions of witness credibility and the "effect and weight to be given to conflicting or inconsistent testimony are questions of fact to be determined by trier of facts, whether court or jury, and not questions of law for the Supreme Court on appeal." *Central Plastics Company v. Goodson,* 537 P.2d 330, 335 (Okla.1975).

■ A resulting trust arises where the legal title to property is transferred but the

---

**8.** The trial court did find that "Lex Bowman's testimony at times was at odds with testimony corroborated by the other parties or depositions to where either the testimony was false or he really had no idea as to the transactions and involvement between plaintiff [Ely] and defendant Kenneth Bowman."

intent appears or is inferred that the beneficial interest is not to go to, or be enjoyed with legal title. In such a case, a trust is implied, or results in favor of the person paying the consideration whom equity deems to be the real owner. *Catron v. First National Bank & Trust of Tulsa,* 434 P.2d 263, 267 (Okla.1967).

Bowman was required to prove his entitlement to a resulting trust by "clear, satisfactory and convincing proof." *Boatright v. Perkins,* 894 P.2d 1091, 1094 (Okla. 1995). The presumption of a resulting trust arises when the proponent clearly, satisfactorily and convincingly proves he provided the payment for the property at the time of purchase. *Boatright* at 1094.[9]

In the case at hand, the trial court could properly refuse to find the existence of a resulting trust for either of two reasons. First, evidence of a gift can rebut the presumption that the payor of consideration intended to retain the beneficial interest in the property. Restatement of the Law, Second, Trusts 2d § 441, Comment (1959). The trial court credited Ely's testimony that Bowman provided funds to Kenneth Bowman who in turn bought the "Big House" which he gave to Ely.

Second, by asserting that he loaned the purchase money to Ely, Bowman defeated his claim to a resulting trust.

> Where a transfer of property is made to one person and the purchase price is advanced by another as a loan to the transferee, no resulting trust arises, since the payor intends that the transferee should have the beneficial interest in the property. Such an intention may be shown not only by oral declarations of the payor's intention but also by the circumstances under which the transfer is made.

Restatement of the Law, Second, Trusts 2d § 441, Comment c (1959). Thus, even under Bowman's claim of a loan, it is clear that he did not intend to transfer naked legal title and retain the beneficial interest in the "Big House."

Likewise, the trial court could properly find that Bowman did not carry his burden of proving the existence of a constructive trust by clear, unequivocal and decisive evidence. *Peyton v. McCaslin,* 417 P.2d 316, 321 (Okla.1966). Constructive trusts are "imposed against an individual when the individual obtains legal right to property through fraudulent, abusive means, or by means 'against equity and good conscience'." *Matter of Estate of Ingram,* 874 P.2d 1282, 1287 (Okla.1994). Unlike a resulting trust, which relies on the doctrine of valuable consideration and not legal title, a "constructive trust primarily involves the presence of fraud, which requires that the equitable title be recognized in one other than the legal title holder." *Cacy v. Cacy,* 619 P.2d 200, 202 (Okla.1980). Both resulting and constructive trusts are equitable remedies.

We cannot say that the trial court's decision that Ely obtained the property by way of gift was against the clear weight of the evidence. *Bankoff v. Board of Adjustment,* 875 P.2d 1138, 1143 (Okla.1994); *Kulscar v. Kulscar,* 896 P.2d 1206, 1208 (Okla.App. 1995).

### DENIAL OF APPELLANT'S REQUEST FOR JUDGMENT

Finally, Bowman contends that the trial court erred when it did not grant him judgment in the amount of $30,500.00. Bowman did not raise or brief this issue in his motion for new trial. We will not address it here. 12 O.S.1991 § 991(b); 12 O.S.1991 Ch. 15, App. 2, App.Proc.Rule 1.17(a).

We find no reversible error and affirm the judgment.

AFFIRMED.

HANSEN, P.J., and ADAMS, V.C.J., concur.

---

9. Title 60 O.S.1991 § 137 supplies the legally presumed intent that the payor of consideration of the property intended to retain the beneficial interest in the property. In this case, Bowman did not argue in the trial court that § 137 applied. Rather, the sole argument was that the June 5, 1987 writing mandated a resulting trust. We will limit our review to the theory presented to the trial court. *Mills v. Mills,* 512 P.2d 143, 151 (Okla.1973).