In the Matter of the ESTATE OF
Margaret SHUNKAMOLAH,
Deceased.

Lottie PRATT, Appellant,

v.

Gladys ROUWALK, Executrix of the Estate of Margaret Shunkamolah,
Appellee.

No. 69832.

Court of Appeals of Oklahoma,
Division No. 1.

Oct. 23, 1990.

F. Piping Brownstem, Norman, for appellant.

Harvey Payne, Lance A. Pool, Pawhuska, for appellee.

Roger J. Marzulla, Martin W. Matzen, Angus E. Crane, Washington, D.C., for the U.S., amicus curiae.

## MEMORANDUM OPINION

ADAMS, Presiding Judge:

Appellant Lottie Pratt contends the trial court erred in denying her motion to vacate a decree approving a final account, determining heirship, and distributing assets of her mother, an allotted, enrolled, full blood Osage Indian. Assets distributed included restricted property. In essence, her appeal presents the following questions: Did Public Law 95–496, 92 Stat. 1660, passed by Congress October 21, 1978 (1978 Act), divest the courts of Oklahoma of jurisdiction over Osage Indian probate matters, as claimed by Pratt? Or, as contended by Appellee, was the 1978 enactment merely a recognition by the federal government that court reorganization in 1969 eliminated the county court system and conferred that system's jurisdiction upon the district

courts? We conclude Congress did not intend to eliminate Oklahoma state court jurisdiction.

Margaret Shunkamolah died on January 26, 1981. Her estate includes Osage headrights, cash, and personal property, but no real property. Decedent's will and codicil give token amounts to Pratt and her sister, distributing a substantial estate among. other relatives. The will and codicil were approved as to form on August 28, 1978 by the Field Solicitor of the Bureau of Indian Affairs.

After decedent's death, her will and codicil were approved and determined valid, only after protracted litigation before the Osage Agency, Bureau of Indian Affairs, the Regional Solicitor of the U.S. Department of the Interior, the United States District Court for the Northern District of Oklahoma, the United States Court of Appeals, Tenth Circuit, and ultimately the United States Supreme Court which denied certiorari June 22, 1987.

As provided in Section 5(a) of the 1978 Act, the federal appeals did not stay the issuance of letters testamentary by the District Court. Appellee was appointed executrix on October 28, 1983. On July 21, 1987, the District Court entered its Decree Approving Final Account, Determining Heirship and Distributing the Assets of the Estate. Pratt filed a Motion to Vacate Decree on September 14, 1987, claiming the court lacked subject matter jurisdiction. Following hearing, the District Court denied the motion on October 7, 1987, and this appeal followed. Pratt premises her argument on language found in the 1978 Act, which she contends withdrew jurisdiction over Osage probates from Oklahoma courts.

In Act of April 18, 1912, 37 Stat. 86 ("1912 Act"), Congress provided Oklahoma Osage Indian probate matters would "...be subject to the jurisdiction of the county courts of the State of Oklahoma ...". 1912 Act, Section 3. In the 1978 Act, Congress amended that section of 1912 Act granting jurisdiction, noting probate matters were "...subject to the District Court of Oklahoma having jurisdiction...." 1978 Act, Sections 5(a) and (b).

While Pratt concedes the 1912 Act made an express grant of jurisdiction of Osage probates to the county courts in Oklahoma, she argues Congress withdrew that grant of jurisdiction with the 1978 amendments. As the act now reads, she contends, Congress intended for Oklahoma District Courts to have jurisdiction over Osage probates only if Oklahoma state courts may exercise jurisdiction under some other provision of federal law. She contends Congress intended Oklahoma courts to exercise jurisdiction only if Oklahoma had properly obtained jurisdiction over "Indian country" pursuant to 25 U.S.C. § 1322(a) and (b).

■ As noted by Appellee, § 1322(b) specifically removes probate proceedings from the scope of the jurisdiction granted under § 1322, at least insofar as it applies to Indian interests which are restricted against alienation, as are Osage headrights. Even if Oklahoma complied with the provisions of § 1322 and had the consent of the tribe as required by those sections, as Pratt argues Congress must have contemplated, those actions would not confer probate jurisdiction. Under Pratt's theory Congress is deemed to have intended Oklahoma state courts to probate Osage estates only if Oklahoma courts had jurisdiction which they did not have and could not acquire under present law. We do not believe Congress intended such an anomaly.

■ In contrast, Appellee and *amicus curiae* United States assert the amendment was mere re-wording to recognize that the county courts no longer existed, and that the jurisdiction granted them now was exercised by the district courts. Under this analysis, the focus for interpretation is on the phrase "...District Court of the State of Oklahoma...." The phrase "...having jurisdiction ..." would thus relate to the identity of the particular district court within the State of Oklahoma.

■ While Pratt correctly cites *Kennerly v. District Court*, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1970) and *Ahboah v.*

*Housing Authority of Kiowa Tribe,* 660 P.2d 625 (Okla.1970) as requiring us to construe ambiguous provisions for the benefit of Indians, we may look to the provisions of the act itself, and its legislative history, as did the courts in *Kennerly* and *Ahboah,* to determine Congress' intent. Legislative history is instructive in ascertaining the scope of an enactment, and the duty of the courts is to give full effect to the words used by Congress. *See Elizabeth Arden Sales Corp. v. Gus Blass Co.,* 150 F.2d 988 (8th Cir.1945); *Accord Lekan v. P & L Fire Protection Co.,* 609 P.2d 1289 (Okla.1980) (Primary consideration in construing statute is legislative intent, and doubt as to meaning may be resolved by reference to its history); *Midwest City v. Harris,* 561 P.2d 1357 (Okla.1979) (Primary objective of statutory construction is to discover legislative intent which is ascertained from whole act in light of general purpose and object).

The United States argues that Congress intended in the 1978 Act only to substitute the phrase "District Court" in place of "county court" for jurisdiction in Osage probates, pointing to legislative history. House Report No. 95–1459 explains Section 5(b) of the 1978 Act amends the law to "...change the words 'county court' to 'district court'...." Analysis by the Secretary of the Interior in House Report No. 95–1459 states Section 5 would allow "...streamlining probate proceedings before this Department and the district courts of the State of Oklahoma, thus eliminating protracted litigation."

If we construe the 1978 Act as Pratt suggests, we must consider the following provisions in Section 5(a) as mere surplusage:

(1) taxing of costs for determinations of the validity of a will to the estate by the district court if that court determines the costs are beneficial to the whole estate,

(2) petitions by heirs for letters of administration in the district court,

(3) allowing some actions of the district court to be binding and valid even though an appeal from an order of the Secretary of the Interior approving or disapproving a will is pending,

Further, Pratt's construction eliminates the need for the following provisions in Section 5(b):

(1) service of copies of papers filed in the district court upon the Superintendent of the Osage Agency,

(2) appearances by the Superintendent of the Osage Agency in district court to protect the interest of an Osage Indian,

(3) imposition of a duty on the Secretary of the Interior or the Superintendent of the Osage Agency to report to the district court when he determines an estate is being dissipated, wasted, or permitted to deteriorate by negligence, carelessness or incompetence of the executor, administrator, guardian, or person in charge of the estate, and to take steps to have the case investigated and to prosecute civil or criminal remedies, and

(4) determinations by the district court that costs and expenses of civil proceedings be charged upon the estate, or the executor, administrator, guardian, or other person in charge of the estate, and his surety.[1]

Finally, in the case of a contest of the probate of a will, Section 5(a) provides for exclusive federal court jurisdiction. If Congress contemplated exclusive federal court jurisdiction over all phases of the probate of an Osage Indian estate, this provision was unnecessary.

■  We may not read the 1978 Act so as to delete or emasculate provisions when the enactment may reasonably be read otherwise. *Markham v. Cabell,* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1946); *Accord*

---

1. These references to the district court are similar to references in the 1912 Act to the county courts. The 1912 Act provided: that copies of all papers filed in the county court be served upon the Superintendent; the Superintendent could appear in county court to protect allottees; the county court could determine and charge upon the estate, executor, administrator, guardian, or person in charge of the estate costs and expenses of civil proceedings; the Superintendent or the Secretary had the duty to report dissipation, waste, or deterioration to the county court.

*McCown v. Heidler,* 527 F.2d 204 (10th Cir.1975) (legislative enactment will not be rendered ineffective to attain its purpose if such construction may be avoided); *Ledbetter v. Alcoholic Bev. Laws Enforcement,* 764 P.2d 172 (Okla.1988) (rational construction is to be given if language permits). Nor will a statutory scheme be interpreted so as to render portions nugatory since it will not be assumed that a legislative body sought to do a vain and useless act. *In re Supreme Court Adjudication, Etc.,* 597 P.2d 1208 (Okla.1979); Cf. *Steuer v. United States,* 207 Ct.Cl. 282, 284 (1975) (statutes, like regulations, must not be construed to produce absurd or whimsical results unrelated to congressional purpose). Statutes must be read in a manner which effectuates rather than frustrates the major purpose of the legislative draftsmen. *Shapiro v. United States,* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787, rehearing denied, 335 U.S. 836, 69 S.Ct. 9, 93 L.Ed. 388 (1948).

Clearly, the 1978 Act evinces an intent by Congress to take a specialized area of law, that law dealing with the Osage Tribe in Oklahoma, and treat that area in a comprehensive manner. From review of the legislative history, and, more particularly, the language of the 1978 Act itself, we must conclude that Congress intended to recognize that jurisdiction over Osage probate actions formerly exercised by the county courts was now exercised by the district courts. Reading the express words of the 1978 Act, coupled with an appreciation for its general purpose and history, we find Congress intended the 1978 Act as a express grant of jurisdiction over Osage probates to the District Court of the State of Oklahoma. The trial court did not err in concluding it had subject jurisdiction and in denying Pratt's motion to vacate.

AFFIRMED.

BAILEY and MacGUIGAN, JJ., concur.