Cora Sudell LINCOLN, Appellee,

v.

Ross William LINCOLN, Appellant.

No. 77762.

Court of Appeals of Oklahoma,
Division No. 3.

Oct. 6, 1992.

Thomas Filbeck, Sapulpa, for appellee.

P. Thomas Thornbrugh, Tulsa, for appellant.

## OPINION

HANSEN, Vice–Chief Judge:

Appellant, Ross William Lincoln, (Husband) seeks review of a decree of divorce granting Appellee, Cora Sudell Lincoln, (Wife) a divorce from Husband. The decree ordered Husband to pay $617.81 per month in child support for the parties' two children, and awarded Wife judgment against Husband for $36,000.00 support alimony, payable for 60 months.

In his first proposition of error, Husband argues the trial court erred in computing his child support obligation. He argues 43 O.S.1991, § 118(2) requires the trial court to consider the $600.00 alimony payment he is ordered to pay Wife in calculating the parties' proportionate share of child support.

43 O.S.1991, § 118 establishes child support guidelines for trial courts to follow in determining child support payments. That section requires all child support to be computed as a percentage of the combined gross income of both parents. Subdivision 2 of this section defines gross income as "income from any source, except as excluded in this act, and includes but is not limited to income from salaries, wages, commissions, bonuses, dividends, severance pay, pensions, rent, interest income, trust income, annuities, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts and prizes." This para-

graph further excludes from gross income "actual child support received for children not before the court" and benefits received from certain public assistance programs. Subdivision 5 of Section 118 provides that the amount of any pre-existing court order for child support for children not before the court or for *support alimony arising in a prior case* shall be deducted from gross income to the extent payment is actually made under such order. The statute makes no reference to support alimony awarded in the same case.

There are no reported decisions in this State addressing this issue in the context of the statute. The statute does provide that gross income shall include "income from any source" and does not specifically exclude alimony payments contemporaneously ordered. Thus, the definition of gross income in Section 118 can be interpreted as requiring contemporaneously-ordered alimony to be included in Wife's gross income. The next question is whether the statute authorizes the deduction of contemporaneously-ordered alimony from Husband's gross income prior to calculating child support.

Section 118 establishes guidelines which trial courts are directed to follow when computing child support. These guidelines provide that support is to be calculated based on both parties' gross income, as adjusted by the items specified in Section 118. Section 118 clearly provides support alimony arising *in a prior case* shall be *deducted* from gross income to the extent such payments are made. The statute is silent regarding alimony arising in the case before the trial court.

▇▇▇ A statute should be construed according to the fair import of its words taken in their usual sense, in connection with the context and with reference to the purpose of the provision. *Jordan v. State,* 763 P.2d 130 (Okla.Crim.App.1988). Stat-

utes must be read in a manner which effectuates rather than frustrates their purpose. *In the Matter of Estate of Shunkamolah,* 800 P.2d 1079 (Okla.App.1990). To aid in interpreting a statute, this Court may utilize the maxim "expressio unius est exclusio alterius". This is a rule of construction that excludes one thing by implication in a statute which mentions another. *Hardesty v. Andro Corporation–Webster Division,* 555 P.2d 1030 (Okla.1976). The statute specifically provides alimony arising in another case may be deducted from gross income. By expressly allowing the deduction of prior alimony payments only, we can presume that by excluding contemporaneously-ordered alimony from this provision, the Legislature intended that contemporaneously-ordered alimony should not be deducted from gross income.

However, if, following a strict construction of the statute, we would require Wife to include contemporaneous alimony as gross income but *not deduct* the alimony payment from Husband's gross income, we would arrive at a fictitious combined income which exceeded the actual income by $600.00. This would increase Wife's proportionate part of the support and increase the level of support for the children.[1] In light of the purpose of Section 118 to provide child support based on parents' income and relative abilities to pay, we cannot presume that the Legislature intended that child support be calculated on an artificially high combined income.

The only logical way to calculate the parties' respective percentages of child support if alimony is included in Wife's gross income is to adjust Husband's gross income by the same amount. The statute does not authorize adjusting gross income for contemporaneous payment of support alimony. However, neither does the statute expressly exclude contemporaneous support alimony from a party's income. This leaves this

---

1. By including alimony in Wife's income but not deducting it from Husband's gross, this would raise the child support required by the Guidelines to $868.00. The percentage of child support required to be paid by Husband would be reduced from 83% now ordered, to 73%, thereby changing his base support from $654.87 to $633.64 per month. Adding the support alimony to Wife's gross income would increase her percentage of the child support from 17% to 26% (from $134.13 to $225.68 per month). The net difference to Husband by adding the $600.00 support to Wife's gross income is a savings to him of $21.23 a month.

court in the untenable position of being unable to conform our decision to the exact terms of the statute as written.

The Supreme Court of Montana when faced with a similar statute and a similar issue, determined Montana's child support guidelines, which require support to be calculated based on the parties' *net* income, did not authorize the court to include the wife's alimony as income to her and to deduct it from the husband's income. *In re Marriage of Roullier*, 229 Mont. 348, 746 P.2d 1081 (1987). The Montana court considered the fact that most support alimony payments terminate after a specified time, which would require an adjustment to the percentages of child support paid by the parent. The alimony award to wife will terminate in 60 months. Husband has not addressed whether the trial court is required or authorized by statute to compute child support based on the parties' income at the time of trial and again when any alimony support payments terminate.

Similarly, the Minnesota Court of Appeals decided its statute governing child support computation, based on the parents' net income, did not authorize the trial court to subtract the amount of maintenance from the husband's net income before it applied the guidelines to calculate child support. *Driscoll v. Driscoll*, 414 N.W.2d 441 (Minn.App.1987). The Minnesota statute is similar to the Oklahoma statute in that both are based on each parent's income and both provide that only maintenance "currently being paid" or "in a prior case" may be deducted from the calculation of income. Minn.Stat. Section 518.551, Subd. 5 (1991).

■ Accordingly, we hold child support obligations, based on the Oklahoma Child Support Guidelines as presently written, must be calculated without consideration of any contemporaneous support alimony award. The trial court did not err by not including Wife's contemporaneously-ordered alimony payment in her gross income before computing child support responsibilities.

■ Husband next maintains the trial court's determination that his gross monthly income is $4,150.22, is not supported by the evidence. The evidence indicates Husband received gross wages from his employment at Red Wing Products of $27,-497.00 per year. There was also evidence that Husband was self-employed and received additional income from Ross Lincoln Enterprises (R.L.E.). Husband testified R.L.E. had accounts receivable in 1990 totalling $34,560.95 and invoices R.L.E. owed or paid totalling $24,947.31. Husband also had income attributed to interest. After reviewing the evidence, we cannot say the trial court's finding that Husband's gross monthly income from all sources equalled $4,150.22 is against the clear weight of the evidence. Although 43 O.S.1991, Section 118(3) requires the trial court to carefully review income and expenses from self-employment to determine an appropriate level of gross income available to the parent to satisfy a child support obligation, the trial court's failure to make a specific finding regarding husband's monthly income from R.L.E. does not constitute reversible error. *Archer v. Archer*, 813 P.2d 1059 (Okla.App.1991). The trial transcript indicates the trial court carefully considered Husband's earnings from self-employment.

Husband also takes issue with the trial court's order granting Wife $36,000.00 in support alimony, payable in $600.00 payments for 60 months. Husband maintains the award is excessive, that the trial court failed to make a specific finding of need by Wife, and that he should have received credit against the alimony ordered for the temporary support he paid under the temporary order.

■ A divorce is an action of equitable cognizance and the trial court is vested with wide discretion in awarding alimony. *Wood v. Wood*, 793 P.2d 1372 (Okla.App.1990). This Court will not disturb the trial court's determination unless the record shows an abuse of discretion or that the decision is clearly against the weight of the evidence. *Id.* at 1375. Contrary to Husband's assertion, the trial court did not commit reversible error in failing to make a specific finding regarding wife's "need" for alimony. In an action of

equitable cognizance, a general finding of a trial court is deemed a finding of each thing necessary to sustain the judgment. *Archer v. Archer*, 813 P.2d 1059 (Okla.App.1991).

The controlling factors for determining the appropriateness of an alimony award, is the need of the party receiving alimony and the ability of the other spouse to pay. *Wood* at 1376. Upon a showing of need, the party is entitled to receive alimony in a sum commensurate with the mode of living to which the party has become accustomed. *Id.* The trial court must consider the parties' earning capacity, marital estate, parties' conduct and the potential recipient's contribution to the marital estate. *Id.*

Our review of the record shows the trial court received evidence demonstrating the factors listed above. Wife, who has a high school diploma, has a gross monthly income of $866.67. Husband is making over $27,-000.00 per year from his job and approximately $10,000.00 to $12,000.00 annually from his own business. The parties were married over 22 years. After the children were born, Wife's primary job was taking care of the children and the home. Wife assisted Husband in establishing and running his business. Wife introduced evidence of her monthly expenses. Under the evidence presented, we cannot conclude the trial court abused its discretion in awarding alimony to Wife.

■ Husband asserts the temporary alimony he paid to Wife from the last date of trial until the divorce decree was rendered (approximately 7 months), should be credited to the $36,000.00 permanent alimony award. He cites *Jones v. Jones*, 612 P.2d 266 (Okla.1980) as authority for this argument. That case involved the issue of an application by one spouse after the trial court's divorce decree was rendered, for alimony pendente lite. That decision provides that alimony granted for the duration of an appellate contest, may be considered an advance upon permanent alimony with credit given the obligor against any liability determined by the final judgment in the case. *Jones* at 268. *Jones* does not suggest a spouse may be given credit for temporary alimony payments against subsequently-ordered permanent alimony, while the parties await the trial court's decision. This proposition of error is without merit.

■ Husband next attacks the trial court's distribution of property. He maintains Wife received $63,033.03 in assets (65% of the marital estate) and he only received $34,669.28 in assets from an estate valued at $97,702.31. He recognizes the trial court's distribution of the marital assets need not be equal, just equitable. *Wood v. Wood*, 793 P.2d 1372 (Okla.App.1990). The burden of showing an abuse of discretion in adjusting the rights to property is on the party complaining.

Husband's figures are based on valuing Ross Lincoln Enterprises at nothing. As previously stated, the trial court received evidence regarding the business's income for the prior three years. Husband's own evidence suggests the business made a net profit for 1990 of approximately $10,000.00. In 1988, the business netted $33,257.00 and in 1989, it netted $1,211.00. When the parties separated, Husband withdrew $17,-000.00 from one of the parties' bank accounts which he testified were proceeds from the business. We fail to see on what basis Husband concludes this business had no value. After reviewing the trial court's division of property, we find Husband has not shown the division was inequitable.

■ Husband also challenges the trial court's order requiring him to pay Wife's attorney fees. He does not challenge the reasonableness of the fees, just the fact that he was required to pay them. An award of attorney fees is addressed to the sound discretion of the trial court which decision will not be disturbed absent an abuse of discretion. *Wood*, supra at 1376. The trial court should consider the parties and all of the circumstances in the case, including the means and property of the respective parties under the property division. *Harmon v. Harmon*, 770 P.2d 1 (Okla.1983).

■ At the hearing on the application for attorney fees, the trial court found that

if Husband had paid the May 25th alimony and child support payments as ordered, then he should pay only $1000.00 of Wife's $2,869.00 attorney fee. If, however, he had not made those payments, he should be ordered to pay all of the fee because "she will not have the funds to make those payments". The trial court's order following the hearing ordered Husband to pay $2,519.00 for Wife's attorney fee. The trial court clearly considered the relative means and property of the parties in arriving at its decision to award Wife attorney fees. We find no abuse of discretion.

Finally, Husband contends he was prejudiced because the trial court took seven months to render its decision from the close of trial. He argues he was prejudiced in the amount of $8,658.00, which was temporary support and car payments to Wife. He cites Rule 27 of the Rules for District Courts and Article 2, Section 6 of the Oklahoma Constitution in support of this proposition.[2]

The record reveals the divorce proceedings were concluded on October 24, 1990. The trial judge states he would take the matter under advisement "until I get the bank statements and until I've had an opportunity to review the documents that have been presented in the evidence today." It was Husband who was to submit certain documents to the court. We cannot discern if or when such documents were submitted. In December, 1990, Wife submitted an application for a hearing on the matter. In the court minute of the January hearing, the matter was stricken and the court's decision was to be furnished to the attorneys in writing. The record does not contain any evidence Husband sought relief from the Temporary Order.

Husband has offered no reason for the delay. Neither has he shown the trial court's judgment was rendered more than sixty days after he submitted the bank statements. From this silent record, we cannot presume the trial court abused its discretion.

The judgment of the trial court is AFFIRMED. Wife's motion for attorney fees incurred in this appeal is GRANTED.

This case is remanded to the trial court for hearing on the amount of reasonable attorney fees.

BAILEY, P.J., and HUNTER, J., concur.

---

2. Article 2 Section 6 of the Oklahoma Constitution provides: The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong.... Rule 27 of the Rules for District Courts provides in any matter taken under advisement, a decision shall be rendered within sixty (60) days of the date on which the matter was taken under advisement or, if briefs are to be submitted, within sixty (60) days of the date of the filing of the final brief.