Attorney General Loving has asked me to respond to your request for an Attorney General Opinion regarding whether any restrictions are attached to real estate purchased with bond proceeds. Because your questions may be answered by reference to controlling statutes and case law, this office has determined your request should be answered through this informal letter. The discussion which follows is not an official opinion of the Attorney General. Rather, the following analysis and conclusions, while solely my own, have been reached after careful research of the questions you have raised. After our telephone conversation discussing your request it appears that you are asking, in effect, the following questions: 1. May a school district sell excess land owned by the district and at the time of sale place covenants running with the land on the property? 2. May a school district sell excess land purchased with bond proceeds and place the proceeds of the sale of excess land in the general fund, or must the proceeds of the sale of excess land be used to retire the bond indebtedness? The first part of question one regarding the authority of a school district to sell land is addressed in 70 O.S. 5-105 and 70 O.S. 5-117 (1993). Section 70 O.S. 5-105 discusses the governing body of the school district and states: "Every school district shall be a body corporate and shall possess the usual powers of a corporation . . . and in that name may sue or be sued and be capable of contracting and being contracted with and holding such real and personal estate as it may come into possession of or by will or otherwise and as authorized by law." More specifically 70 O.S. 5-117 gives particular powers to the board of education of a school district (the "board") stating: "The board of education of each school district shall have power to: * * * 11. dispose of personal or real property no longer needed by the district by sale, exchange, lease, lease-purchase, sale and partial lease back, or otherwise. Real property shall be conveyed pursuant to a public sale, public bid, or private sale. Prior to the sale of any real property, the board of education shall have the real property appraised." Section 70 O.S. 5-117 clearly allows the board to sell real property that it determines is "no longer needed by the district." The second part of question one is whether the board has the power to attach covenants running with the land to property the board is selling. The case of Carlyle v. Independent School Dist. I-71, 811 P.2d 618, 620
(Okla.App. 1991) citing Board of Education of Oklahoma City v. Cloudman, 185 Okla.400, 92 P.2d 837, 841 (1939), addresses the general issue of local school board power. The school board has and can exercise those powers that are granted in express words; those fairly implied in or necessarily incident to the power expressly granted, and those essential to the declared objects and purposes of the corporation. Attaching covenants running with the land to property the board intends to sell is a power "fairly implied" in the power to sell school property as stated in 70 O.S. 5-117(11) (1991). In your second question you ask whether a school district may sell excess land purchased with bond proceeds and place the funds from the sale in the general fund. The Bond Issue Proceeds Act ("the Act"), 62 O.S. 571 et seq. (1991), regulates bond proceeds of any "governmental entity." Section 62 O.S. 573 of the Act includes school boards within the definition of "governmental entity". Therefore the Act clearly applies to school districts. The term "proceeds" is not defined in the Act. However, "statutory words are to be understood in their ordinary sense, except when contrary intention plainly appears." Riffe Petroleum Co. v. Great National Corp. Inc.,614 P.2d 576, 579 (Okla. 1980) "Proceeds" is defined in Black's Law Dictionary, Abridged 5th addition, p. 628, as: "(T)he sum, amount, or value of property sold or converted into money or into other property." Consequently proceeds would include both the funds received from the sale of bonds and the monies gained through the sale of the excess land (which was originally purchased with the bond proceeds). In construing the legislation, the "fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intent and purpose of the Legislature as expressed in the statute." Jackson v. Independent School District No. 16 of Payne County, 648 P.2d 26, 29
(Okla. 1982). The purpose of the Act is clearly set out in 62 O.S. 1991, 572. The legislature enacted this law in an effort to "guarantee to the citizens of the State of Oklahoma that the proceeds of bond issues approved by them will be expended only on the purposes or projects for which any such bond issue was approved." Because the intent of the legislature is clearly expressed, such intent must be considered in the interpretation of the statute. The statute "must be read in a manner which effectuates rather than frustrates the major purpose of the legislative draftsman." Matter of Estate of Shunkamolah, 800 P.2d 1079, 1080
(Okla.App. 1990) (citation omitted). Section 62 O.S. 547(C) states in part that: "If any such bond issue is approved at an election, the particular governmental entity shall expend all of the proceeds of such bond issue for the purposes set out in the proposition voted upon and shall expend not less than eighty-five percent (85%) of the monies allocated to each specific project, unless such project can be completed for a smaller amount of money(.)" The word "shall" is usually given its common meaning of "must". It is interpreted as implying a command or mandate. Sneed v. Sneed, 585 P.2d 1364 (Okla. 1978). The governmental entity (in this case the school board) is commanded by the legislature to use all of the proceeds from the bond issue for the purposes set out in the bond issue. Bond proceeds for the purposes set out in the bond issue would include the monies obtained by the selling of excess land purchased with bond issue money. Therefore, any proceeds acquired through the selling of property purchased with bond proceeds must be spent "for the purposes set out in the proposition." Furthermore, the intent of the act as stated in 572 is to "guarantee to the citizens who approve bond issues that the money will be expended only on the purposes or projects for which the bond issue was approved." It would be an absurd result to construe 62 O.S. 571 et seq. in a manner which would allow "secondary" proceeds of a bond issue to be spent for items not voted on in the bond issue election. The legislature will not be presumed to have intended an absurd result, and a statute should be given a sensible construction bearing in mind the evils intended to be avoided or the remedy afforded. AMF Tubescope Co. v. Hatchel, 547 P.2d 374, 379 (Okla. 1976). The "evil intended to be avoided" is clearly the misuse of bond proceeds. It is conceivable that a governmental entity might try to circumvent the Bond Issue Proceeds Act by using Bond monies to purchase excess land for speculation. Such a practice is one of the evils to be avoided. It appears that any proceeds from the sale of land purchased with bond issue money must be used in the retirement of the bond debt or in projects within the purpose set out in the bond issue election. Is therefore, the opinion of the undersigned attorney that: 1. A local board of education may sell property no longer needed by the district. The local board of education has the implied power to place covenants running with the land on the property before sale. 2. Proceeds from the sale of excess land which was purchased with bond proceeds cannot be placed in the general fund. The proceeds must be used in the bond issue projects or used to retire part of the bond indebtedness.
(L. Michelle Stephens)